UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANTHONY NORRIS, individually, and on behalf of all others similarly situated, | ) ) ) | Case No._____ |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| -vs- | ) ) | |
| TWININGS OF NORTH AMERICA, INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

Plaintiff Anthony Norris ("Plaintiff"), individually, and on behalf of similarly situated persons, through Plaintiff's undersigned counsel, alleges the following against Defendant Twinings of North America, Inc. ("Twinings" or "Defendant") as to Plaintiff's own acts upon personal knowledge, and as to all other matters upon information and belief.

### PRELIMINARY STATEMENT

1. This case is also about Twinings' sale and marketing of "misbranded" tea products. Twinings utilizes unlawful and misleading labels to market its green, black and white tea products. Twinings employs unlawful (i) "nutrient content claims," (ii) antioxidant claims, and (iii) health claims. These label claims are prohibited because they are both misleading and because the FDA and State of Massachusetts do not recognize the truthfulness, scientific validity and appropriateness of these claims.

2. Twinings' actions violate identical federal and Massachusetts laws specifically prohibiting the kinds of illegal food sales and misleading labels as described herein.

## PARTIES

3.      Plaintiff is a resident citizen of Middlesex County, Massachusetts.  Plaintiff purchased, among others, Twinings' Earl Grey Tea, Mint Green Tea, and Green Tea (the "Purchased Tea Products") during the period from October 1, 2010 to the date of notice to the class (the "Class Period").

4.      Defendant Twinings of North America, Inc. is a Delaware corporation with its principal place of business in Clifton, New Jersey.  Twinings is a wholly owned subsidiary of Associated British Foods which is based in London, England. It markets over 50 varieties of tea, including green, black, red, and white teas. Defendant is a leading producer of retail tea products, including the Purchased Tea Products and substantially similar products (defined and listed below).  Defendant sells its tea products to consumers through grocery and other retail stores throughout Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) members of the class are citizens of a state different from defendant; and (3) the number of class members is greater than 100.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## TEA PRODUCTS AT ISSUE

7.      The tea products listed in paragraph 9 are substantially similar to the Purchased Tea Products.  Collectively, the Purchased Tea Products and the products listed in paragraph 9 are referred to herein as the "Misbranded Tea Products."

8.      As described herein, each of the Misbranded Tea Products (i) are the same basic product: tea from the Camellia sinensis plant, (ii) make the same prominent illegal label statements ("*Natural Source of Antioxidants*" and/or "*A natural source of protective antioxidants and blended using only 100% natural ingredients, Twinings Green Tea provides a great tasting and healthy tea experience*") and, (iii) violate the same food labeling regulations of Massachusetts.

9.      These products were sold by Twinings during the Class Period.  Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Twinings products had labels that violate the same provisions of Massachusetts law and have the same label misrepresentations as the Purchased Tea Products.

**<u>Green Tea</u>**

a.      Green Tea
b.      Camomile Green Tea
c.      Mint Green Tea
d.      Gunpowder Green Tea
e.      Green Tea with Jasmine 100% Organic & Fair Trade Certified
f.      Green Tea with Mint Organic & Fair Trade Certified
g.      Jasmine Green Tea
h.      Lemon Green Tea
i.      Lemon Green Tea
j.      Cranberry Green Tea
k.      Pure Green 100% Organic & Fair Trade Certified
l.      Green Tea with a hint of Citrus Organic & Fair Trade Certified
m.      Green Tea Decaffeinated
n.      Green Tea with Mint Cold Brewed Iced Tea

**Black and White Tea**

o.     Lady Grey
p.     English Breakfast
q.     Prince of Wales
r.     Variety Pack black Teas
s.     Darjeeling
t.     Ceylon Orange Pekoe
u.     Blackcurrant Breeze Orange Bliss
v.     Pomegranate Delight
w.     Breakfast Blend 100% Organic & Fair Trade Certified
x.     Christmas Tea
y.     Earl Grey
z.     English Afternoon
aa.     Irish Breakfast
bb.     Lapsong Souchong
cc.     China Oolong
dd.     Mixed Berry
ee.     Lemon Twist Pure Mint
ff.     Earl Grey Organic & Fair Trade Certified
gg.     Black Tea with Lemon 100% Organic & Fair Trade Certified
hh.     Chai
ii.     Almond Chai
jj.     Hazelnut Chai
kk.     Ultra Spice Chai
ll.     Spiced Apple Chai
mm.     French Vanilla Chai
nn.     Pumpkin Spice Chai
oo.     Decaf Chai
pp.     Lady Grey Decaf Tea
qq.     Earl Grey Decaf Tea
rr.     Irish Breakfast Decaf Tea
ss.     English Breakfast Decaf Tea
tt.     English Classic Cold Brewed Iced Tea
uu.     Citrus Twist Cold Brewed Iced Tea
vv.     English Classic Cold Brewed Iced Tea
ww.     Lady Grey Cold Brewed Iced Tea
xx.     Mixed Berries Cold Brewed Iced Tea
yy.     Pure White Tea

10.     The label of each green tea product listed above, including the Green Tea and

Mint Green Tea purchased by Plaintiff, bears the front panel label statement "*Natural Source of*

*Antioxidants.*"

11.     The label of each green tea product listed above, including the Green Tea and Mint Green Tea purchased by Plaintiff, bears the back panel label statement "*A natural source of protective antioxidants and blended using only 100% natural ingredients, Twinings Green Tea provides a great tasting and healthy tea experience*."

12.     The label of each black and white tea product listed above, including the Earl Grey Tea purchased by Plaintiff, bears the same statement as the green tea products: "natural source of antioxidants"

13.     The Misbranded Tea Products have the same labels, labeling, packaging, and sizes.  They are the same product, tea from the Camellia sinensis plant.  The only difference in the Misbranded Tea Products is the flavor of the tea.

14.     Misbranded Tea Products are all sold in the same type of packaging (boxes of tea). Regardless of packaging, they are all tea and they all suffer from the same labeling violations.

## SUMMARY OF THE CASE

15.     Plaintiff's case has two facets.  The first is the illegal sale of "misbranded" food products brought pursuant to Massachusetts ALM GL ch. 94 §§ 187 and 190 which prohibit the manufacture, sale, delivery or offer of delivery of misbranded food, including food whose label is false and misleading in any particular.

16.     Plaintiff alleges that Defendant packages and labels the Misbranded Tea Products in violation of (1) Massachusetts food labeling laws which adopt, incorporate – and are identical – to the food labeling requirements federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq*. ("FDCA") the federal food labeling requirements contained in the Code of Federal Regulation and (2) Massachusetts food labeling laws which parallel the FDCA and impose identical labeling

requirements.

17.     These violations render the Misbranded Tea Products "misbranded."  Under

Massachusetts law, a food product that is misbranded cannot legally be manufactured,

advertised, distributed, or sold. Because misbranded products cannot be legally sold or resold

and they are not merchantable.  As a result of Twinings' "misbranding" and unlawful sales,

Plaintiff and the Class were deprived of money in unlawful transactions in violation of laws

designed to protect the Plaintiff and other consumers from just such an occurrence.

18.     The second aspect to this case is the deceptive part. Plaintiff alleges that the labels

on the Misbranded Tea Products are misleading, deceptive, unfair and fraudulent in the exact

same way, *i.e.*, claim to have antioxidant levels and properties that they lack and claim to provide

consumers certain nutritional and health benefits despite the fact that these benefits were not

recognized by the FDA or the State of Massachusetts or supported by reliable scientific data.

19.     Plaintiff reviewed the labels on the Purchased Tea Products, reasonably relied in

substantial part on the label statements described herein, and was thereby deceived, in deciding

to purchase the Purchased Tea Products.

20.     Plaintiff did not know, and had no reason to know, that Defendant's Purchased

Tea Products product were misbranded under Massachusetts law and bore food labeling claims

that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did

not know, and had no reason to know, that the labels of Defendant's Purchased Tea Products

were false and misleading.

## MASSACHUSETTS FOOD LABELING RULES AND VIOLATIONS

21.     Identical Massachusetts and federal laws regulate the content of labels on

packaged food.  The requirements of the FDCA were adopted, and are mirrored by,

Massachusetts.  Massachusetts requires that all packaged food be labeled in compliance with applicable law including all labeling requirements contained in 21 C.F.R. Part 101 - Food Labeling. 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11. Massachusetts requires this "to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented." 105 CMR 590.001; 105 CMR 590.002; Massachusetts Food Code § 3-101.11. Massachusetts mandates that "[f]ood shall be safe, unadulterated, and, as specified under [FC] § 3-601.12, honestly presented." Massachusetts Food Code § 3-101.11; 105 CMR 590.001. Massachusetts Food Code § 3-601.12 provides that "[f]ood shall be offered for human consumption in a way that does not mislead or misinform the consumer. Massachusetts Food Code § 3-601.12; 105 CMR 590.001.

22.     Massachusetts has also enacted a number of laws and regulations that parallel federal food laws and regulations and impose identical requirements.

23.     Pursuant to Massachusetts ALM GL ch. 94 § 187, food is misbranded (1) if its label is false and misleading in any particular or (2) if the package containing it or its label bears any statement, design or device regarding the ingredients or the substances contained therein which is false or misleading in any particular.

24.     The Misbranded Tea Products are labeled with antioxidant claims, nutrient content claims, and health claims that are prohibited by law because the products fail to meet the minimum regulatory requirements for making such claims.  Defendant's use of these claims violates Massachusetts law, Massachusetts ALM GL ch. 94 § 187 because such label claims are "false and misleading."

25.     Defendant has violated Massachusetts ALM GL ch. 94 §§ 187, 190; 105 CMR 590.001, Massachusetts Food Code §§ 3-101.11; 3-601.12 and because, for all the reasons set

forth herein, Misbranded Twinings Tea Product labeling is false and misleading in one or more ways, is not honestly presented and is offered for human consumption in a way that misleads and misinforms the consumer.

26.      Defendant has violated the requirements of 21 C.F.R. §§ 101.13, 101.54, 101.65, 21 U.S.C. § 343(a) and 21 U.S.C. § 343(r).  These violations of federal labeling requirements also result in violations of 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11 which mandate that packaged food comply with all applicable laws.

27.      Defendant has violated the requirements of Massachusetts ALM GL ch. 94 § 187; ALM GL ch. 94 § 190; 105 CMR 590.001; 105 CMR 590.002; 105 CMR 590.004(B); 105 CMR 520.109; Massachusetts Food Code § 3-101.11; Massachusetts Food Code § 3-201.11; and Massachusetts Food Code § 3-601.12.

28.      A reasonable consumer would expect that when Defendant labels its products as "healthy" then the products would in fact be healthy as defined by the State of Massachusetts and the federal government and its agencies.  A reasonable consumer would expect that when Defendant labels its products as having certain levels of antioxidants or nutrients then the products would in fact contain the minimum levels claimed as established by measurement criteria and standards recognized and authorized by the State of Massachusetts and the federal government and its agencies.

29.      A reasonable person would also attach importance to whether Defendant's products are "misbranded" and whether they were merchantable, *i.e.*, legally salable and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's products had Plaintiff known they were not capable of being legally sold.

8

30.     The Misbranded Tea Products have labels that violate Massachusetts law and are therefore misbranded and may not be sold or purchased and have no economic value.

**PLAINTIFF AND THE PURCHASED TEA PRODUCTS**

31.     Plaintiff purchased Twinings' Purchased Tea Products in the Class Period.

32.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

33.     The following unlawful and misleading language appears on the label: "*Natural Source of Antioxidants*" and/or "*A natural source of protective antioxidants and blended using only 100% natural ingredients, Twinings Green Tea provides a great tasting and healthy tea experience.*"

34.     Plaintiff was misled by the Defendant's unlawful and misleading labels on these products.  Plaintiff would not have otherwise purchased this product had Plaintiff  known the truth about these products, *i.e.*, they (i) were misbranded, (ii) were illegal products, (iii) violated federal and state laws and regulations, (iv) lacked the antioxidant, nutrient and health benefits their labeling claimed, (v) failed to meet the minimum regulatory requirements for making the antioxidant, nutrient and health claims they bore, (vi) could not be lawfully sold or resold, (vii) were not merchantable, and/or (vii) were economically worthless. Plaintiff had other food alternatives that that satisfied legal standards and Plaintiff also had cheaper alternatives.

35.     Plaintiff reasonably relied on these label representations/omissions and based and justified the decision to purchase the Purchased Tea Products, in substantial part, on these label misrepresentations/omissions.

36.     The Purchased Tea Products are unlawful and misbranded and violate Massachusetts law, including Massachusetts ALM GL ch. 94 § 187 and 105 CMR 520.109, as

well as the guidance, regulations and statutes listed herein.

37.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

38.     The purchase of the Misbranded Tea Products damaged Plaintiff and the Class because misbranded products cannot be legally sold and have no economic value.  Plaintiff and the Class are due the price paid for the Misbranded Tea Products.

39.     Plaintiff and the Class paid money for Misbranded Tea Products that were worth zero.  Plaintiff and the Class received no value from the Misbranded Tea Products.

40.     Plaintiff and the Class could have purchased cheaper alternative products that were not illegal, misbranded, or worthless.

41.     Plaintiff and the Class paid an unwarranted premium over cheaper alternative products that were not illegal, misbranded, or worthless.

42.     As a result of Defendant's unlawful misrepresentations and omissions, Plaintiff and the Class purchased Misbranded Tea Products and were injured as a result of Defendant's actions.

43.     Plaintiff and the Class paid money for products that were of a lesser value than represented by Defendant.

44.     Plaintiff and the Class also paid an unwarranted premium above alternative products that were not illegal, misbranded, or worthless.

45.     Pursuant to Massachusetts ALM GL ch. 93A, on October 27, 2014, a written demand for relief, identifying the Plaintiff and the Class and reasonably describing the unfair or

deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to Defendant.

## DEFENDANT'S SPECIFIC LABELING VIOLATIONS

### The "Natural Source of Antioxidants" Nutrient Content Claim

46.     Pursuant to the FDCA and its implementing regulations, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A); 21 C.F.R. § 101.13.  Massachusetts has adopted and incorporated the federal requirements regarding nutrient content claims.

47.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front or top of packaging in a font large enough to be read by the average consumer.  Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

48.     21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which Massachusetts has adopted and incorporated into its own state food labeling requirements.

49.     These regulations authorize use of a limited number of defined nutrient content claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on food labels, these regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot be used on a label. Only those claims, or their synonyms, that are specifically defined in the regulations may be used. All other claims are prohibited. 21 CFR § 101.13(b).

50.     Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food. It is thus clear which types of claims are

prohibited and which types are permitted. Manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct. 58 Fed. Reg. 2302. In addition, 21 U.S.C. § 343(r)(2), whose requirements have been adopted by Massachusetts, prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

51.     Similarly, the regulations specify absolute and comparative levels at which foods qualify to make these claims for particular nutrients (e.g., low fat . . . more vitamin C) and list synonyms that may be used in lieu of the defined terms. Certain implied nutrient content claims (e.g., "healthy") also are defined. The daily values (DVs) for nutrients that the FDA has established for nutrition labeling purposes have application for nutrient content claims, as well. Claims are defined under current regulations for use with nutrients having established DVs; moreover, relative claims are defined in terms of a difference in the percent DV of a nutrient provided by one food as compared to another. *See e.g*., 21 C.F.R. §§ 101.13 and 101.54.

52.     Defendant's nutrient contents claims "*natural source of antioxidants*" and "*natural source of protective antioxidants*" are unlawful and misleading.

53.     Defendant has repeatedly made unlawful nutrient content claims about antioxidants and other nutrients that fail to utilize one of the limited defined terms. These nutrient content claims are unlawful because they failed to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13, 101.54 and 101.65, which have been incorporated in Massachusetts's food labeling laws.  To the extent that the terms used to describe antioxidants without a recognized daily value or RDI (such as "natural source") are deemed to be a synonym for a defined term like "contain" the claim would still be unlawful because, as these nutrients do not have established daily values, they cannot serve as the basis for a term that has a minimum daily value threshold as the defined terms at issue here do.

54.     Defendant's claims concerning unnamed antioxidant nutrients or the other vitamins or nutrients are false because Defendant's use of a defined term is in effect a claim that the products have met the minimum nutritional requirements for the use of the defined term when they have not.

55.     An "excellent source" claim requires a nutrient to be present at a level at least 20% of the Daily Value for that nutrient while "contains" and "provides" claims require a nutrient to be present at a level at least 10% of the Daily Value for that nutrient.  Defendant's "*natural source*" claims about its teas are nutrient content claims require a minimum 10% DV. Claims that Twinings' teas are a "*natural source*" of antioxidants are false and unlawful. Defendant's teas do not meet the minimum nutrient level threshold to make such a claim which is 10% or more of the RDI or the DRV of a nutrient with a recognized RDI per reference amount customarily consumed.

56.     By using a defined term like "*natural source of*," Defendant is, in effect, falsely asserting that its products meet at least the lowest minimum threshold for any nutrient content claim which would be 10% of the daily value of the nutrient at issue.  Such a threshold represents the lowest level that a nutrient can be present in a food before it becomes deceptive and misleading to highlight its presence in a nutrient content claim. Tea does not contain an antioxidant with a recognized RDI, much less at a level as required by the regulations. None of the nutrients in tea has a DV and thus it is unlawful to make nutrient content claims about them.

57.     In addition to violating federal labeling laws which have been adopted by Massachusetts, Defendant's actions also violate parallel Massachusetts laws like 105 CMR 520.109. 105 CMR 520.109 (C)(7)(e) states that that:

> No claim may be made that a food is a significant source of a nutrient unless that nutrient is present in the food at a level equal to or in excess of 10% of the U.S.

RDA in a serving (portion). No claim may be made that a food is nutritionally superior to another food unless it contains at least 10% more of the U.S. RDA of the claimed nutrient per serving (portion).

This provision was violated by Defendant's claims for antioxidants which do not have an R.D.A. and Defendant's claims about other nutrients that are not present at the required levels in tea.

58.     FDA enforcement actions targeting identical or similar claims to those made by Defendant have made clear the unlawfulness of such claims.  Defendant knew or should have known about these enforcement actions. These include an August 23, 2010 warning letter to Unilever, a March 24, 2011 warning letter to Jonathan Sprouts, Inc., and an October 23, 2012 FDA warning letter to Hail Merry, LLC.

59.     The nutrient content claims regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.

60.     Defendant has violated these referenced regulations. Plaintiff relied on Twinings' nutrient content claims when making Plaintiff's purchase decisions and was misled because Plaintiff erroneously believed the implicit misrepresentation that the Twinings products Plaintiff was purchasing were beneficial, healthy and met the minimum nutritional threshold to make such claims. Antioxidant and other claimed nutrient content was important to the Plaintiff in trying to buy "healthy" food products. Plaintiff would not have purchased these products had Plaintiff known that the Twinings products did not have the beneficial effects claimed and in fact did not satisfy such minimum nutritional requirements with regard to the claimed nutrients.

61.     For these reasons, Defendant's nutrient content claims at issue in this case are false and misleading and in violation of 21 C.F.R. §§ 101.13, 101.54 and 101.65 and identical Massachusetts law, and the products at issue are misbranded as a matter of law. Therefore,

Defendant's Misbranded Twining Tea Products are misbranded as a matter of Massachusetts and federal law and cannot be sold or held and thus have no economic value and are legally worthless. Plaintiff and members of the Class who purchased the Defendant's Misbranded Twining Tea Products paid an unwarranted premium for the products.

### The Antioxidant Claim

62.     Defendant also has violated identical Massachusetts and federal labeling regulations specific to antioxidants.

63.     Federal and Massachusetts regulations regulate antioxidant claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.54(g) contains special requirements for nutrient claims that use the term "antioxidant":

(1)     the name of the antioxidant must be disclosed;

(2)     there must be an established Recommended Daily Intake ("RDI") for that antioxidant, and if not, no "antioxidant" claim can be made about it;

(3)     the label claim must include the specific name of the nutrient that is an antioxidant and cannot simply say "antioxidants" (*e.g.*, "high in antioxidant vitamins C and E"),[1] *see* 21 C.F.R. § 101.54(g)(4);

(4)     the nutrient that is the subject of the antioxidant claim must also have recognized antioxidant activity, *i.e.*, there must be scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R. § 101.54(g)(2);

(5)     the antioxidant nutrient must meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively.  For example, to use a "High" claim, the food would have to contain 20% or more of the Daily Reference Value ("DRV") or RDI per

---

[1] Alternatively, when used as part of a nutrient content claim, the term "antioxidant" or "antioxidants" (such as "high in antioxidants") may be linked by a symbol (such as an asterisk) that refers to the same symbol that appears elsewhere on the same panel of a product label followed by the name or names of the nutrients with the recognized antioxidant activity.  If this is done, the list of nutrients must appear in letters of a type size height no smaller than the larger of one half of the type size of the largest nutrient content claim or 1/16 inch.

serving.  For a "Good Source" claim, the food would have to contain between 10-19% of the DRV or RDI per serving, *see* 21 C.F.R. § 101.54(g)(3); and

(6)     the antioxidant nutrient claim must also comply with general nutrient content claim requirements such as those contained in 21 C.F.R. § 101.13(h) that prescribe the circumstances in which a nutrient content claim can be made on the label of products high in fat, saturated fat, cholesterol or sodium.

64.     The antioxidant labeling for the Misbranded Twining Tea Products violate Massachusetts law:  (1) because the names of the antioxidants are not disclosed on the product labels; (2) because there are no RDIs for the antioxidants being touted, including flavonoids and polyphenols; (3) because the claimed antioxidant related nutrients fail to meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively; and (4) because Defendant lacks adequate scientific evidence that the claimed antioxidant nutrients participate in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from the gastrointestinal tract.

65.     The Misbranded Tea Products bears the statement "*Natural source of Antioxidants,*" or "*Natural Source of Protective Antioxidants,*" and/or "*Healthy Tea Experience.*"  These same types of violations were condemned in the FDA Warning Letter to Unilever/Lipton discussed above.

66.     These same violations were condemned in numerous other warning letters to other tea companies of which Defendant knew or should have known including the April 11, 2011 warning letter to Diaspora Tea & Herb Co., LLC, the FDA warning letter dated February 22, 2010 to Redco Foods, Inc. regarding its misbranded Salada Naturally Decaffeinated Green Tea product because "there are no RDIs for (the antioxidants) grapeskins, rooibos red tea) and anthocyanins"; FDA warning letter dated February 22, 2010 to Fleminger Inc. regarding its misbranded TeaForHealth products because the admonition "[d]rink high antioxidant green tea" .

. . "does not include the nutrients that are the subject of the claim or use a symbol to link the term antioxidant to those nutrients."

67.     In addition to violating federal labeling laws like 21 C.F.R. § 101.54 which have been adopted by Massachusetts, Defendant's actions also violate parallel Massachusetts laws like 105 CMR 520.109. 105 CMR 520.109 (C)(7)(e) states that that:

> No claim may be made that a food is a significant source of a nutrient unless that nutrient is present in the food at a level equal to or in excess of 10% of the U.S. RDA in a serving (portion). No claim may be made that a food is nutritionally superior to another food unless it contains at least 10% more of the U.S. RDA of the claimed nutrient per serving (portion).

68.     This provision was violated by Defendant's claims for antioxidants which do not have an R.D.A.

69.     Additional evidence of Twinings' knowledge that its antioxidant and health claims are improper and misleading is provided by two findings of the British Advertising Standards Authority ("ASA"). The first is the September 26, 2007 Adjudication against an advertisement by the British Tea Counsel (a British Trade Association of tea producers of which Twinings is a founding member) touting the presence of antioxidants in tea. ASA found the advertisement to be misleading.

70.     The second is the November 25, 2009 ASA adjudication against one of Twinings' biggest competitors, Tetley Tea.  On information and belief Twinings was aware of this Adjudication against its competitor. There, the ASA found that Tetley's print and TV advertisements stating that Tetley's products were: "rich in antioxidants that can keep your heart healthy" were misleading.

71.     The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the products. Not only do Twinings' antioxidant, nutrient

content and health claims violate FDA rules and regulations, they directly contradict current scientific research, which has concluded: "[T]he evidence today does not support a direct relationship between tea consumption and a physiological AOX [antioxidant] benefit." This conclusion was reported by Dr. Jane Rycroft, Director of Lipton Tea Institute of Tea, in an article published in January, 2011.

72.     This scientific evidence and consensus conclusively establishes the improper nature of the Defendant's antioxidant claims as they cannot possibly satisfy the legal and regulatory requirement that the nutrient that is the subject of the antioxidant claim must also have recognized antioxidant activity, *i.e.*, there must be substantial scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R. § 101.54(g)(2).

73.     In fact, the United States Department of Agriculture (USDA) recently removed its ORAC data base related to foods with antioxidant properties "because the values indicating antioxidant capacity have no relevance to the effects of specific bioactive compounds… on the human health" and that "ORAC values [the former USDA data base] are routinely misused by food and dietary supplement manufacturing companies to promote their products…." and "[t]here is no evidence that the beneficial effects of polyphenol-rich foods can be attributed to the antioxidant properties of these foods. " USDA Agricultural Research Service Oxygen Radical Absorbance Capacity (ORAC) of Selected Foods, Release 2 (2010). http://www.ars.usda.gov/Services/docs.htm?docid=15866

74.     In addition to violating federal labeling laws like 21 C.F.R. § 101.54 which have been adopted by Massachusetts, Defendant's actions also violate parallel Massachusetts laws like 105 CMR 520.109. 105 CMR 520.109 (I)(5) states that that:

> A food labeled under the provisions of 105 CMR 520.109, shall be deemed to be mis-branded under M.G.L. c. 94, § 187 if its labeling represents, suggests, or implies:

> That the food has dietary properties when such properties are of no significant value or need in human nutrition. Ingredients or products such as rutin, other bioflavonoids, para-amino-benzoic acid, inositol, and similar substances which have in the past been represented as having nutritional properties but which have not been shown to be essential in human nutrition may not be combined with vitamins and/or minerals, added to food label in accordance with 105 CMR 520.109, or otherwise used or represented in any way which states or implies nutritional benefit.

75.     This provision was violated by Defendant's claims for antioxidants which do not have any recognized effect in the human body.

76.     The antioxidant regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of antioxidants in food products and purported beneficial health benefits from consuming the food product.

77.     For these reasons, Defendant's antioxidant claims at issue in this case are false and misleading and in violation of 21 C.F.R. §§ 101.13, 101.54 and 101.65 and identical Massachusetts law, and the products at issue are misbranded as a matter of law. Defendant has violated these referenced regulations.

78.     Defendant's claims in this respect are false and misleading and the products are in this respect misbranded under identical Massachusetts and federal laws, Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**Health Claims**

79.     Defendant violated identical Massachusetts and federal law by making numerous unapproved health claims about its products. It has also violated identical Massachusetts and federal law by making numerous unapproved claims about the ability of its products to cure, mitigate, treat and prevent various diseases that render its products unapproved drugs under Massachusetts and federal law. Moreover, in promoting the ability of its products to have an effect on certain diseases such as cancer and heart disease among others, Defendant has violated the advertising provisions of the Sherman law.

80.     A health claim is a statement expressly or implicitly linking the consumption of a food substance (*e.g.*, ingredient, nutrient, or complete food) to risk of a disease (*e.g.*, cardiovascular disease) or a health-related condition (*e.g.*, hypertension). *See* 21 C.F.R. § 101.14(a)(1), (a)(2), and (a)(5). Only health claims made in accordance with FDCA requirements, or authorized by FDA as qualified health claims, may be included in food labeling. Other express or implied statements that constitute health claims, but that do not meet statutory requirements, are prohibited in labeling foods.

81.     21 C.F.R. § 101.14, which has been expressly adopted by Massachusetts, provides when and how a manufacturer may make a health claim about its product.  A "Health Claim" means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (*e.g.*, a brand name including a term such as "heart"), symbols (*e.g.*, a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the

presence or level of a substance in the food and a disease or health-related condition (*see* 21 CFR § 101.14(a)(1)).

82.     Further, health claims are limited to claims about disease risk reduction, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease. An example of an authorized health claim is: "Three grams of soluble fiber from oatmeal daily in a diet low in saturated fat and cholesterol may reduce the risk of heart disease. This cereal has 2 grams per serving."

83.     A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food. 21 U.S.C. § 321(g)(1)(D).

84.     The use of the term "healthy" is not a health claim but rather an implied nutrient content claim about general nutrition that is defined by FDA regulation.

85.     21 C.F.R. § 101.65, which has been adopted by Massachusetts, sets certain minimum nutritional requirements for making an implied nutrient content claim that a product is healthy.  For example, for unspecified foods the food must supply at least 10 percent of the RDI of one or more specified nutrients.  Defendants have misrepresented the healthiness of its products while failing to meet the regulatory requirements for making such claims.  In general, the term may be used in labeling an individual food product that:

> Qualifies as both low fat and low saturated fat;
>
> Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;
>
> Does not exceed the disclosure level for cholesterol (*e.g.*, for most individual food products, 60 mg or less per reference amount and per labeled serving size); *and*
>
> Except for raw fruits and vegetables, certain frozen or canned fruits and

vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, *or* fiber per reference amount.

Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with FDA's fortification policy.

21 C.F.R. § 101.65(d)(2).

86.     FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d).

87.     Twinings has violated the provisions of 21 C.F.R. §101.13, 21 C.F.R. §101.14, C.F.R. §21 C.F.R. §101.54, 21 C.F.R. §101.65, 21 U.S.C. §321(g)(1)(D), 21 U.S.C. §321(m) and 21 U.S.C. §352(f)(1) on a number of its products.

88.     The therapeutic claims on Twinings' labels establish that its products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. The Misbranded Twining Tea Products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of 21 U.S.C. § 321(p).  New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of 21 U.S.C. § 355(a). FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

89.     The Misbranded Twining Tea Products packaging claims a level of "*protective antioxidants*" and "*healthy tea experience*" but these products do not contain any antioxidant substance or nutrient with an established RDI, nor any nutrient with any recognized health benefits to humans.  Twinings' tea products do not have approval from FDA to make the health related claims.

90.     Plaintiff perception that Defendant's tea products were healthy was premised on the health related labeling claims viewed by Plaintiff prior to purchasing Defendant's products at various times during the Class Period. Plaintiff relied on the Defendant's health related claims which influenced Plaintiff's decision to purchase the Defendant's products. These unlawful claims continue to be made on Defendant's packaging and websites to this day. Plaintiff would not have bought the products had Plaintiff known Defendant's claims were unlawful, false, misleading, unapproved and that the products were misbranded.

91.     The FDA has issue warning letters pertaining to these types of health claims including an August 12, 2014 warning letter to Premier Organics, Inc. ("The Art of Healthy Foods" and "healthy…food…").

92.     Plaintiff and members of the Class were misled into the belief that such claims were legal and had passed regulatory muster and were supported by science capable of securing regulatory acceptance. Because this was not the case, the Plaintiff and members of the Class have been deceived.

93.     In addition to violating federal labeling laws like 21 C.F.R. § 101.14 which have been adopted by Massachusetts, Defendant's actions also violate parallel Massachusetts laws like 105 CMR 520.109. 105 CMR 520.109 (I)(1) states that that:

> A food labeled under the provisions of 105 CMR 520.109, shall be deemed to be mis-branded under M.G.L. c. 94, § 187 if its labeling represents, suggests, or implies:

> That the food because of the presence or absence of certain dietary properties, is adequate or effective in the prevention, cure, mitigation, or treatment of any disease or symptom. This provision was violated by Defendant's claims for antioxidants which do not have any recognized effect in the human body.

94.     Defendant's health claims were also improper because of the inadequate nutritional profiles of Defendant's tea products.

95.     21 C.F.R. § 101.14, which has been expressly adopted by Massachusetts, prohibits manufacturers from making any health claim about products that have inadequate nutrient levels.

96.     In addition, 21 C.F.R. § 101.65, which has been adopted by Massachusetts, sets certain minimum nutritional requirements for making an implied nutrient content claim that a product is healthy.  For example, for unspecified foods the food must be low in fat, saturated fat, sodium and cholesterol and supply at least 10 percent of the RDI of one or more specified nutrients.

97.     Defendant has misrepresented the healthiness of its products while failing to meet the regulatory thresholds for making such claims either because the products lack minimum nutritional requirements to make such a claim.

98.     Defendant Misbranded Twining Tea Products violate 21 C.F.R. § 101.14 or 21 C.F.R. § 101.65 as well as 21 C.F.R. § §101.13 and 101.54   and 105 CMR 520.109.

99.     Plaintiff saw such health related claims and relied on the Defendant's health claims, which influenced Plaintiff's decision to purchase the Defendant's products. Plaintiff would not have bought the products had Plaintiff known Defendant's products failed to meet the minimum nutritional threshold for such health claims and , in fact, did not contain any nutrient with a recognized health benefit.

100.     Plaintiff and members of the Class were misled into the belief that Defendant's products would provide the claimed health benefits and met the minimum nutritional thresholds for the health claims that were made about them. Because this was not the case, the Plaintiff and members of the Class have been deceived.

101.    Plaintiff and members of the Class have been misled by Defendant's unlawful labeling practices and actions into purchasing products they would not have otherwise purchased had they known the truth about these products. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

102.    Defendant's health related claims are false and misleading and the products are in this respect misbranded under identical Massachusetts and federal laws, Misbranded products cannot be legally sold and thus have no economic value and are legally worthless.

103.    The front panel of the Misbranded Twining Tea Products packaging claims a level of "antioxidants" but these products do not contain any antioxidant substance or nutrient with an established RDI.  Twinings makes various health related claims of benefits to be derived from using its products but, as with the Lipton and Diaspora Tea & Herb Co. products, Twinings' tea products do not have approval from FDA to make the health related claims. Moreover, the health related claims are in violation of 21 U.S.C. § 352(f)(1) and therefore the products are misbranded.

104.    Defendant has manufactured, advertised, distributed and sold products that are misbranded under Massachusetts law. Misbranded products cannot be legally manufactured, advertised, distributed, sold or held and have no economic value and are legally worthless as a matter of law.

105.    Defendant has violated the standards set by 21 CFR §§ 101.13, and 101.54, which have been adopted by reference in the Sherman Law, by including unauthorized antioxidant and other nutrient claims on its products. Defendant has violated the standards set by 21 CFR §§ 101.14, and 101.65, which have been adopted by reference in Massachusetts, by including

unauthorized health and healthy claims on its products. Defendant's actions also violate 105 CMR 520.109.

## CLASS ACTION ALLEGATIONS

106.    Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following "Class:"

> All persons in Massachusetts who, from October 1, 2010, until the date of notice purchased a Twinings green, black or white tea product.

107.    Plaintiff seeks to represent this Class of persons who purchased Misbranded Tea Products in Massachusetts.

108.    The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

109.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

110.    Based upon Defendant's publicly available sales data with respect to Misbranded Tea Products, it is estimated that the number of Class members is potentially in the millions, and that joinder of all Class members is impracticable.

111.    This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

> a.    Whether Defendant engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Misbranded Tea Products sold to consumers;

b.      Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c.      Whether Defendant made unlawful and misleading antioxidant, nutrient content and health related claims with respect to the food products it sold to consumers

d.      Whether Defendant unlawfully sold misbranded food products in violation of the FDCA and the food labeling laws of Massachusetts;

e.      Whether Defendant breached express or implied warranties;

f.      Whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiff and the Class; and

g.      Whether Defendant were unjustly enriched by its deceptive practices.

112.    Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Purchased Tea Products during the Class Period.  Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

113.    Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously

litigate this class action, and Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

114.    There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

115.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

116.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

117.    Plaintiff is a member of the Class Plaintiff seeks to represent.  Plaintiff's claims are typical of the Class members' claims.  Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

118.    There are no unique defenses which may be asserted against Plaintiff individually, as distinguished from the Class.  The claims of Plaintiff are the same as those of the Class.

119.    No conflicts of interest exist between Plaintiff and the other Class members. Plaintiff has retained counsel that is competent and experienced in complex class action litigation.  Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the Class.

120.    This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of Massachusetts ALM GL ch. 94 §§ 187 and 190 and 105 CMR 520.**

121.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

122.    The Misbranded Tea Products listed herein are all in containers that are misbranded.

123.    Massachusetts ALM GL ch. 94 § 187 provides, *inter alia*, that: "Food shall be

deemed to be misbranded:  1. If its labeling is false or misleading in any particular . . . if the package containing it or its label bears any statement, design or device regarding the ingredients or the substances contained therein which is false or misleading in any particular.

124.     All labeling of the containers of Misbranded Tea Products listed herein are (i) false and misleading in a particular, (ii) are made as to be misleading, (iii), lacked the antioxidant, nutrient and health benefits their labeling claimed, (iv) failed to meet the minimum regulatory requirements for making the antioxidant, nutrient and health claims they bore and (v) are misbranded.

125.     Massachusetts ALM GL ch. 94 § 190 bars the manufacture, sale, delivery or offer of delivery of misbranded food.

126.     The violations of 105 CMR 520.109 and the federal provisions adopted by Massachusetts render Twinings Tea Products misbranded.

127.     Plaintiff and the Class purchased misbranded containers of Misbranded Tea Products.

128.     Plaintiff and the Class members would not have purchased Misbranded Tea Products had they been aware that those products are illegal to sell, violate state and federal law, are misbranded, are not merchantable, are economically worthless, lacked the antioxidant, nutrient and health benefits their labeling claimed, and failed to meet the minimum regulatory requirements for making the antioxidant, nutrient and health claims they bore.

129.     Plaintiff and the Class members were harmed as a result of the purchase of Misbranded Tea Products and are entitled to damages, including the amounts spent on Misbranded Tea Products and punitive damages.

## <u>COUNT TWO</u>

### Breach of Implied Warranty of Merchantability

130.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

131.    Under Massachusetts law, goods to be merchantable must at least be such as: (a) pass without objection in the trade under the contract description; (b)  in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; (d)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.  ALM GL ch. 106, § 2-314.

132.    Defendant's misbranded food products violated the implied warranty of merchantability because as misbranded goods unlawfully labeled in violation of state and federal regulations they were contraband and thus incapable of complying with ALM GL ch. 106, § 2-314(a)-(e).  In addition, because of the false antioxidant, nutrient content and health claim statements on the labels of the Defendant's misbranded food products, the Defendant's misbranded food products failed to conform to the promises or affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability. The products lacked the antioxidant, nutrient and health benefits their labeling claimed, and failed to meet the minimum regulatory requirements for making the antioxidant, nutrient and health claims they bore.

133.     Implied in the purchase of Misbranded Tea Products by Plaintiff and the Class is the warranty that the purchased products are legal and can be lawfully sold or resold and are not contraband.

134.     Implied in the purchase of Misbranded Tea Products by Plaintiff and the Class is the warranty that the purchased products are properly labeled and packaged.

135.     Defendant knowingly and intentionally illegally Misbranded Tea Products.

136.     Misbranded food products are contraband.

137.     Plaintiff would not have knowingly purchased products that were illegal, misbranded, contraband or unsellable.

138.     Plaintiff would not have knowingly purchased products that were illegal to sell or resell.

139.     No reasonable consumer would knowingly purchase products that are illegal, misbranded, contraband, or unsellable.

140.     No reasonable consumer would purchase products that cannot be legally sold or resold.

141.     The purchased Misbranded Tea Products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

142.     As misbranded products that could not be legally sold or resold, the Misbranded Tea Products were not merchantable.

143.     As a result, Plaintiff and the Class were injured through their purchase of unsuitable, useless, illegal, misbranded, and unsellable products.

144.     Plaintiff would not have purchased Misbranded Tea Products if Plaintiff knew they failed to conform to the promises and affirmations of fact made on the container or label of

these products and thus breached the implied warranty of merchantability. In particular, Plaintiff would not have purchased Misbranded Tea Products if Plaintiff knew they lacked the antioxidant, nutrient and health benefits their labeling claimed, and failed to meet the minimum regulatory requirements for making the antioxidant, nutrient and health claims they bore.

145.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Misbranded Tea Products, together with punitive damages.

## COUNT THREE

### Breach of Express Warranty

146.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

147.    Defendant engaged in a scheme of offering Misbranded Tea Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling.

148.    In furtherance of its plan and scheme, Defendant prepared and distributed within Massachusetts and nationwide via product packaging and labeling, statements that misleadingly and deceptively represented the composition and nature of its Misbranded Tea Products.

149.    Plaintiff and the Class were the intended targets of such representations.

150.    Plaintiff and the Class reasonably relied on Defendant's representations.

151.    Defendant's affirmations of fact and/or promises relating to its Misbranded Tea Products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises.

152.    Alternatively, Defendant's descriptions of its Misbranded Tea Products became part of the bases of the bargains, creating express written warranties that the products purchased

by Plaintiff and the other Class members would conform to Defendant's descriptions and specifications.

153.    In fact, the Misbranded Tea Products purchased by Plaintiff did not so conform.

154.    Defendant expressly warrants on the labels of Misbranded Tea Products that that they are a "*Natural Source of Antioxidants*" and "*A natural source of protective antioxidants*" and that they meet certain antioxidant and nutritional thresholds and have the antioxidant, nutrient and health benefits their labeling claimed,

155.    Misbranded Tea Products are not in fact a "source" of antioxidants as a matter of Massachusetts and federal law and did not meet the minimum regulatory requirements for making an antioxidant related nutrient content claim on the label of a tea product.

156.    Plaintiff and members of the Class relied on the defendant's false labeling representation that Misbranded Tea Products were a "*Natural Source of Antioxidants*" and "*A natural source of protective antioxidants*" and that they met certain antioxidant and nutritional thresholds and had the antioxidant, nutrient and health benefits their labeling claimed.

157.    Defendant has breached its express warranty.

158.    As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the value of the products they purchased was less than warranted by Defendant.

159.    Plaintiff asserts this cause of action for violations of the laws of Massachusetts pertaining to express warranties.

160.    Plaintiff and the Class were injured as a result of Defendant's breach of its express warranties about Misbranded Tea Products.

161.    Misbranded Tea Products that are misbranded due to the Defendant's disregard of food labeling regulations enacted for the protection of public health are a thing of danger that,

like all misbranded food, poses a risk to public health.

162.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Misbranded Tea Products, together with punitive damages.

## COUNT FOUR

### Negligent Misrepresentation

163.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

164.    Defendant had a duty to disclose the presence of artificial ingredients, synthetic additives, chemical preservatives or added artificial colors in Misbranded Tea Products.

165.    In making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about its  Misbranded Tea Products, Defendant failed to fulfill its duties to disclose the material facts alleged above.  Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

166.    Plaintiff and the other Class members, as a direct and proximate cause of Defendant's breaches of its duties, reasonably relied upon such representations and omissions to their detriment.

167.    By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial, together with punitive damages.

## COUNT FIVE

### Negligence

168.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

169.     Defendant negligently made misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about its Misbranded Tea Products.

170.     Defendant failed to label or advertise its Misbranded Tea Products in a lawful manner and violated its duties to disclose the material facts alleged above.

171.     Plaintiff and the other Class members, as a direct and proximate cause of Defendant's breaches of its duties, reasonably relied upon such representations to their detriment.

172.     As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiff and the Class.

173.     Defendant's illegal actions constitute negligence *per se*.

174.     Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

175.     By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## COUNT SIX

### Unjust Enrichment

176.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

177.     As a result of Defendant unlawful and deceptive actions described above, Defendant were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Misbranded Tea Products.

178.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from the Plaintiff and the Class.

179.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Misbranded Tea Products, together with punitive damages.

## COUNT SEVEN

### Money Had and Received

180.    The manufacture, delivery, offer to delivery or sale of a misbranded food product is an illegal act in Massachusetts.  Such practices are expressly prohibited by Massachusetts law.

181.    The sale of a misbranded product violates the public policy of Massachusetts.

182.    The Misbranded Tea Products purchased by Plaintiff and the Class were illegal and worthless as a matter of law.

183.    Plaintiff and members of the Class were unaware that the Misbranded Tea Products they purchased were misbranded, illegal, and worthless.

184.    Defendant received the money from Plaintiff and the Class used to purchase Misbranded Tea Products.

185.    Defendant benefitted from receipt of this money.

186.    Under principles of equity and good conscience, Defendant should not be permitted to keep this money.

187.    Plaintiff and the members of the Class are thus entitled to recovery of the funds they expended to purchase the Defendant's Misbranded Tea Products, together with punitive damages.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of Plaintiff's claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, prays for judgment against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled pursuant to under Massachusetts law;

C.    For an order requiring Defendant to immediately cease and desist from selling Twining tea products in violation of law; enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell Twining tea products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.    For an order awarding attorneys' fees and costs;

E.    For an order awarding punitive damages;

F.    For an order awarding pre-judgment and post-judgment interest; and

G.    For an order providing such further relief as this Court deems just and proper.

Dated:  October 30, 2014.

Respectfully submitted,

MIRABELLA LAW, LLC


 /s/  *Erica C. Mirabella*
Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
Telephone: 617-580-8270
Facsimile: 617-583-1905
erica@mirabellallc.com

Charles J. LaDuca
Bonnie J. Prober
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com
bprober@cuneolaw.com

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: 662-834-2488
Facsimile: 662-834-2628
donbarrettpa@gmail.com

Robert A. Clifford
CLIFFORD LAW OFFICES, PC
120 North LaSalle, 31st Floor
Chicago, IL 60602
Telephone: 312-899-9090
Facsimile: 312-251-1160
chd@cliffordlaw.com

Zona Jones
PROVOST UMPHREY LAW FIRM, LLP
490 Park Street
Beaumont, Texas 77701
Telephone: 409-835-6000
Facsimile: 409-813-8618
zjones@pulf.com

Keith M. Fleischman
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: 212-880-9571
Facsimile: 917-591-5245
keith@fleischmanlawfirm.com

Dewitt M. Lovelace
LOVELACE AND ASSOCIATES, LLC

12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: 850-837-6020
Facsimile: 850-837-4093
dml@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda,
Suite 425
San Jose, CA 95126
Telephone: 408-429-6506
Facsimile: 408-369-0752
pgore@prattattorneys.com

J. Price Coleman
COLEMAN LAW FIRM
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

*Counsel for Plaintiff*